1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                 FOR THE EASTERN DISTRICT OF CALIFORNIA

9   MARCIA STARR-GORDON,

10            Plaintiff,              No.   CIV S-03-0068 LKK GGH

11      vs.

12  MASSACHUSETTS MUTUAL LIFE
    INSURANCE COMPANY, et al.,
13
              Defendants.            ORDER
14  _____/

15          Presently before the court are discovery disputes remaining after two hearings on

16  plaintiff's motions to compel production of documents, sets five and six, and for sanctions, filed

17  November 24 and December 15, 2004, and heard on December 16, 2004, and January 21, 2005.

18  Also on January 21 the court held an evidentiary hearing to address in part concerns regarding

19  defendant's document production in response to the fifth set.  In the December 28, 2004 order, the

20  court limited the evidentiary hearing to the time period from January 15, 1999 through December,

21  2003.  After resolving some disputes at hearing and ordering further status reports after hearing,

22  the court has now considered the remaining disputes which concern plaintiff's motion to compel

23  fifth and sixth sets of requests for production of documents, and plaintiff's request for sanctions.[1]

24

25        [1] At the December 16, 2004 hearing, the court found defendant's responses to plaintiff's
    fourth set of interrogatories were satisfactory.  Therefore, plaintiff's motion to compel further
26  responses is denied.

1

1   BACKGROUND

2           Plaintiff contends she is disabled from her dental hygienist position due to back

3 and shoulder problems.  Defendant is plaintiff's disability income insurer on a policy issued in

4 June, 1991.  After paying plaintiff disability income insurance benefits for approximately one

5 year's disability, commencing December, 2000, defendant discontinued them in December, 2001.

6           In this diversity action plaintiff contends, pursuant to California law, that defendant

7 terminated her disability income insurance benefits in breach of contract, and did so in bad faith.

8 Plaintiff also has a claim of unfair business practices under Cal. Bus. & Prof. Code § 17200.

9           Plaintiff's first motion to compel relating to the instant discovery was heard on

10 December 16, 2004.  At that time, the court denied plaintiff's motion as it related to interrogatory

11 21 of the fourth set of interrogatories, finding that defendant's responses were satisfactory.  In

12 regard to plaintiff's fifth set of requests for production of documents, the original document

13 requests at issue concerned documents previously produced by defendant in regard to its

14 "Knowledge Net" system, which was its online claims handling manual/resource for claims

15 adjusters employed by the Disability Insurance Strategic Business ("DISB") unit.  Through these

16 documents, plaintiff seeks to show that during the calendar year 2001, when defendant terminated

17 plaintiff's claim, it had a business plan to terminate or deny more claims that its pricing model had

18 assumed, so it could release more reserves and improve its profitability.

19           Defendant originally refused to produce the documents, claiming they were

20 confidential and proprietary, and also represented that production was ongoing due to the massive

21 number of documents being produced.  As a result, the court ordered plaintiff to file a statement

22 on December 22, 2004, after receiving further production from defendant.  Plaintiff continued to

23 seek documents which defendant claimed it did not have in its possession.  During this time

24 period, defendant complied with many of the requests and finally produced a privilege log.  Based

25 on plaintiff's statement, the court on December 28, 2004 ordered an evidentiary hearing in order

26 for defendant to produce a witness knowledgeable regarding defendant's production in response

1 to the fifth set, and to explain gaps in production and other missing documents as set forth in Dean

2 Burnick's affidavit of December 22, 2004.  The witness was also to testify regarding

3 Massachusetts Mutual's efforts to produce relevant paper and electronic documents.

4          On January 21, 2005, defendant produced Ms. Dzienjelewski, the Director of

5 Management Information for the Disability Income Line of Business.  She testified to defendant's

6 efforts to locate responsive documents.  Plaintiff's contention at the start of the hearing was that

7 she wanted documents regarding Claims Department updates whereas the KPI reports focused on

8 the business plan and had already been produced in full.  Plaintiff opined that Ms. Dzienjelewski

9 was not the appropriate witness because she was involved in producing KPI reports and did not

10 work in the Claims Department.  This witness' testimony, however, indicates that she coordinated

11 the document search with employees from various departments, including the Claims Department.

12 All told, twenty people at Massachusetts Mutual had been searching for responsive documents

13 since July or August, 2004, and Ms. Dzienjelewski testified that she personally had spent at least a

14 month of her time searching for documents.  (Tr. at 71:4-14.)  The bottom line of the testimony

15 was that she had searched thoroughly, and had others search thoroughly, and there was nowhere

16 else they could search.  (Tr. at 103:4.)

17          The January 21, 2005 hearing was also intended to address plaintiff's motion to

18 compel her sixth set of requests for production of documents, filed December 16, 2004, and

19 originally noticed for hearing on January 6, 2005.  The January 21 hearing did not focus on this

20 set, however, and therefore oral argument has not been entertained in regard to these documents.

21 It appears that defendant complied with most of the requests, leaving only two categories of

22 documents at issue, those relating to defendant's decision to stop insuring dental hygienists, and

23 investment income documents relating to disgorgement.  Plaintiff seeks relief in the form of

24 disgorgement of illicit profits obtained as a result of allegedly withholding benefits and collecting

25 premiums which were not owed.

26 \\\\\

1          Most recently, in February, 2005, both parties filed status reports regarding both

2   sets five and six.  They have set forth the categories of document requests still at issue and their

3   respective arguments.

4   DISCUSSION

5   I.  Plaintiff's Fifth Set of Requests for Production of Documents

6          A.  Monthly Denial/Termination Reports

7          Defendant has already produced a witness who testified regarding the search and

8   gaps in production.  Ms. Dzienjelewski testified that these reports were generated by the Claims

9   Department, that she did not know how they were kept after being generated, that the reason for

10  the gaps may have been because they were not created during those time periods, but she was not

11  sure.  (Tr. at 110.)  She did have discussions with the Claims Department regarding the gaps at a

12  large December meeting, but could not remember whether anyone from this department knew

13  whether such documents were generated during the missing time periods.  (Id. at 111.)  Although

14  she did not have much recollection, she thought the individuals in this department "felt that it

15  wasn't done all the time."  (Id.)  In general, documents for which there were gaps were either not

16  generated regularly or the data could not be located.  (Id. at 111-12.)  Plaintiff is not satisfied with

17  this lack of specific knowledge and recollection.  Nevertheless, this witness testified that she and

18  other personnel searched for missing documents, regardless of the time period, and that

19  documents are not out there that she and others were not finding.  (Id. at 114, 85.)

20         Defendant cannot be ordered to produce documents that are not in its possession.

21  Plaintiff may attempt to use the significance of gaps at trial to create an inference, especially

22  concerning gaps during the time period surrounding termination of plaintiff's benefits; however,

23  defendant has met its discovery obligations.

24         B.  Claims Department Updates

25         Although Claims Examiner Paul Montanari testified that these updates were

26  generated monthly, Ms. Dzienzjelewski testified at the evidentiary hearing that her search, which

4

1  included searches by Claims Department individuals, did not turn up further updates than what

2  was already produced.  She stated that several people, including the Claims Department head, all

3  of the claims managers, and "pretty much the whole department" searched for Claims Department

4  updates. (Tr. at 75, 84.)   These Claims Department employees searched on their own computers,

5  and all of them reported back to her. (Id. at 83.)  In fact, she and the entire Claims Department

6  brainstormed to identify every kind of document which would have been generated and would

7  have contained the same information. (Tr. at 86-87.)  She contacted former employees and former

8  heads of the Claims Department so their files could be searched also. (Id. at 102.)

9          Ms. Dzienzjelewski also testified that there are gaps in production of these reports

10 because they were created on an ad hoc basis, and not regularly, and that Claims Department staff

11 conveyed this information to her as well. (Id. at 76, 83.)  She specifically testified that there were

12 no claims Department updates generated between February, 2000 and October, 2001.  (Id. at 77.)

13 She and others searched for both electronic and paper documents. (Id. at 75, 77:7-8.)

14          Based on this witness' testimony, the court finds the search for this category of

15 documents was satisfactory.

16          C.  Examiner Activity Report Documents

17          The testimony of Ms. Dzienzjelewski satisfactorily explains that reports were not

18 produced because "somebody didn't save it," and that the same information sought by plaintiff

19 can be found in other documents such as the KPI reports. (Tr. at 125.)  She stated that she was not

20 sure when these reports were first generated, but that they ceased being generated in January,

21 2004. (Id. at 121, 122.)  Defendant has produced the documents within its possession.  It will not

22 be ordered to produce a 30(b)(6) deponent to testify regarding the same subject matter about

23 which Ms. Dzienzjelewski already testified.

24          D.  Approval Rate by Examiner

25          Plaintiff asserts that defendant produced these documents only for the years 2002

26 and 2003, but did not produce them for 1999 through 2001.  At the evidentiary hearing, plaintiff

1  did not question witness Dzienzjelewski about these documents.  Defendant has maintained that it

2  conducted a diligent search and was not able to locate these reports for the missing time periods.

3  Because plaintiff failed to get a statement from defendant's representative under

4  oath, defendant's unsworn representation that it conducted a diligent search and could not locate

5  these documents will be accepted.

6  E. Redactions

7  Plaintiff seeks to have already produced documents reproduced in unredacted form.

8  The categories of redacted material are comprised of 2004 data and policyholder data.

9  1. 2004 Data

10  As stated at the hearing, defendant's actions in redacting information outside the

11  relevant 1999 - 2003 time period because it was on the same document as relevant information

12  may have been improper; however, the court will not task defendant with unredacting this

13  information now.  Plaintiff has not substantiated any claim that defendant redacted information

14  which may be pertinent to plaintiff's claim or the pertinent time period.

15  2. Policyholder Data

16  Plaintiff claims that all documents produced by defendant have redacted the name,

17  claim number and policy number.  Because plaintiff contends she has received waivers from 150

18  policyholders whose claims were terminated or denied, their information should not have been

19  redacted, especially in light of the fact that defendant could not locate all of the claims files for

20  these individuals.  Plaintiff's current requests belie her past representations concerning the need

21  for unredacted information which focused only on reserve information.  To raise this argument

22  after defendant has produced over 17,000 pages of documents responsive to the fifth set places an

23  unfair burden on defendant.  Furthermore, defendant has complied with prior requests concerning

24  redaction of certain reserve information by reproducing documents in unredacted form.

25  \\\\\

26  \\\\\

1      F.   Documents Concerning 2004 and 2005

2        Plaintiff continues to seek documents covering the time period after 2003, despite

3 this court's prior order that the evidentiary hearing would cover documents only between January,

4 1999 and December, 2003.  Order, filed December 28, 2004.  Plaintiff argues that current

5 documents are relevant because defendant's current claims handling practices are relevant to

6 defendant's continuing obligation to adjust plaintiff's claim as it never processed her appeal of the

7 termination.  Plaintiff further argues that to obtain injunctive relief for unfair business practices,

8 she must show that the practice is continuing.

9        Although § 17202 provides for injunctive relief, the only such injunctive relief

10 requested by plaintiff is the stripping of defendant's unjust enrichment.  The complaint in this

11 matter requests a disgorgement of unjust enrichment only up to the time of the complaint's filing.

12 No supplemental complaint has been filed.  Moreover, no class has been certified in this case,[2]

13 and the undersigned maintains his serious doubts that plaintiffs will be awarded a windfall of

14 unjust enrichment occasioned by the loss of persons other than plaintiff; the undersigned has

15 doubts that plaintiff can recover unjust enrichment at all.  See Order of March 5, 2004.  The only

16 reason the undersigned has proceeded to allow discovery relevant to the § 17200 "class" claim is

17 for the reason that defendant has taken no steps to have it dismissed, defined, or diminished by the

18 district judge.  But there are limits, and the undersigned's present temporal limitations have

19 defined them for discovery purposes.  Plaintiff's request for documents after December 2003 is

20

21      [2] Ca. Bus. and Prof. Code § 17203 requires that an unfair practices plaintiff comply with Cal. Code Civ. P. 382, the general class action statute in California law.  This provision was added by voter initiative (Proposition 64) in November 2004, and the vast majority of California

22 appellate cases have held that it is retroactive.  See e.g., Lytwyn v. Fry's Electronics, 126 Cal. App.4th 1455, 1481, 25 Cal. Rptr.3d 791, 812 (2005).  It is beyond the purpose of this footnote

23 to describe California class actions, but such actions rely heavily on Fed. R. Civ. P. 23.  See Janik v. Rudy, Exelrod & Zieff, 119 Cal. App.4th 930, 14 Cal. Rptr.3d 751 (2004) and quite

24 possibly Cal. Civil Code § 1781 (consumer class action) as well as  California Rules of Court. While such state  rules would not be applicable in federal court, in all probability, an unfair

25 practices plaintiff in federal court would now have to seek some type of class certification under Fed.R.Civ.P. 23 in order to get any class type relief.  How else could one define the unjust

26 enrichment to be disgorged?

1  denied.

2  II.  Plaintiff's Sixth Set of Requests for Production of Documents

3      A.  Spot Bonuses

4      Both parties agree that this dispute is resolved, but have outlined their efforts in the

5  face of their opponent's lack of cooperation anyway, presumably to lay the groundwork for a

6  sanctions request.

7      B.  Documents Regarding Decision to Stop Insuring Dental Hygienists

8      Although defendant eventually agreed to produce documents concerning its

9  decision to stop insuring dental hygienists after plaintiff gave notice she was moving to compel,

10 plaintiff is not satisfied with defendant's production of documents for December, 1998 to

11 December, 2002 only.  The documents produced do not include any of the decision making

12 documents, and defendant represented that it found no such documents.[3]  Plaintiff concedes that

13 she did not question the custodial witness, Ms. Dziengelewski, regarding this representation,

14 explaining that the testimony was focused on set five.

15     Although the scope of discovery is generally broad, it is not unlimited; the requests

16 must be relevant and cannot be unreasonably cumulative, duplicative, or unnecessarily

17 burdensome in light of their benefit.  Fed. R. Civ. P. 26(b)(2); Oppenheimer, 437 U.S. 340, 352,

18 98 S. Ct. 2380, 2390 (1978).  A district court has broad discretion in controlling discovery, Little

19 v. City of Seattle, 863 F.2d 681, 685 (9th Cir.1988), and in determining whether discovery is

20 burdensome and oppressive.  Diamond State Ins. Co. v. Rebel Oil. Inc., 157 F.R.D. 691, 696

21 (D.Nev.1994).  The question, then, is whether, pursuant to Rule 26(b)(2)(iii), the burden of the

22 proposed discovery outweighs its likely benefit.  The court should take "into account the needs of

23 the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

24

25     [3]  The request for decision making documents is request number 58.  Defendant's
   production was responsive to request number 57, which sought documents regarding defendant's
26  loss experience with dental hygienists.

1   the litigation, and the importance of the proposed discovery in resolving the issues." Advisory

2   Committee Comment to 2000 amendments to Rule 26.

3           Defendant must be taken at its word that there were no decision making

4   documents, but only so long as its representation covers the time period set out by the court,

5   January, 1999 through December, 2003.[4] Beyond December, 2003, any decision making becomes

6   remote to plaintiff, and if she is to represent a class, she should be similarly situated to the other

7   members.

8           Plaintiff's request is denied insofar as defendant has no documents responsive to

9   request number 58, for the time period from January, 1999 through December, 2003.

10          C.   Investment Income Documents Pertaining to Disgorgement

11          Plaintiff seeks disgorgement of illicit profits as one form of relief.  Plaintiff alleges

12   that defendant improperly withheld benefits and collected premiums which plaintiff did not owe

13   and earned investment profit on those funds.  To prove the amount, plaintiff seeks documents

14   indicating return on invested funds from the first quarter of 1998 to the third quarter of 2001, and

15   for 2004 and 2005.  Defendant has produced documents for the intervening period.  Plaintiff states

16   that KPI reports have included this information since April, 2002.

17          Defendant objects, claiming that plaintiff has not submitted a single affidavit from

18   any damages expert stating why additional information is necessary.  Defendant also contends that

19   plaintiff has the information in KPI reports already produced, which show the rate of return

20   information for the prior year.  Defendant has submitted an affidavit from Dan Skwire, its damage

21   expert, stating that the KPI reports already produced are sufficient to permit someone "to

22   understand trends in financial results ... experienced by MassMutual during the time period from

23   January, 1999 to December, 2003." Exh. N to Defendant's Report, ¶ 8.

24   _____

25       [4] Plaintiff's report references production of documents by defendant in response to
     requests numbered 57 and 58 for the time period from December, 1998 to December, 2002,
26   which is not the time period delineated by the court.

1    Based on the dates alleged in the complaint which set forth the time period during

2  which defendant had improper use of plaintiff's premiums and withheld her benefits, the financial

3  documentation already provided to plaintiff is sufficient to determine the amount of disgorgement.

4  Plaintiff's request for further document production is denied.

5    D.  <u>Sanctions</u>

6    Plaintiff requests sanctions in the amount of $43,888.73.  Defendant seeks

7  sanctions in an unspecified amount.  Fed. R. Civ. P. 37(a)(4)(C) provides that "[i]f [a motion to

8  compel] is granted in part and denied in part," as provided by the instant order, "the court may . . .

9  apportion the reasonable expenses incurred in relation to the motion among the parties and

10 persons in a just manner."  The court finds that both parties made substantial efforts to cooperate

11 after the motions were filed, alleviating the need for the court to resolve many of the disputes, and

12 they were both "substantially justified." Fed. R. Civ. P. 37 (a)(4)(A).  Therefore each party shall

13 bear its own costs.  Neither party is awarded sanctions.

14 <u>CONCLUSION</u>

15    Accordingly, IT IS ORDERED that:

16    1.  Plaintiff's November 24, 2004 motion to compel further responses to fourth set

17 of interrogatories is denied.

18    2.  Plaintiff's November 24 and December 15, 2004, motions to compel responses

19 to plaintiff's fifth set of requests for production of documents, is denied.

20    3.  Plaintiff's December 15, 2004, motion to compel responses to plaintiff's sixth

21 set of requests for production of documents, is denied.

22    4.  Plaintiff's November 24 and December 15, 2004, requests for sanctions are

23 denied.

24 DATED: 4/20/05

/s/ Gregory G. Hollows

25
_____

GREGORY G. HOLLOWS
26 GGH:076 - starr68.doc                        UNITED STATES MAGISTRATE JUDGE

10